**KECO INDUSTRIES, INC., Plaintiff,**

v.

**Melvin R. LAIRD, Secretary of Defense, Lt. Gen. Earl C. Hedlund, Director, Defense Supply Agency, John H. Chaffee, Secretary of the Navy, Gen. Leonard F. Chapman, Jr., Commandant of the Marine Corps, Robert C. Seamans, Jr., Secretary of the Air Force, Defendants.**

**Civ. A. No. 2979–70.**

United States District Court,
District of Columbia.

Nov. 2, 1970.

John Lane, Jr., Washington, D. C., for plaintiff.

Thomas A. Flannery, Joseph M. Hannon, and J. Michael McGarry, III, Washington, D. C., for defendants.

## MEMORANDUM OPINION

GASCH, District Judge.

Plaintiff, an unsuccessful bidder on two related government supply contracts, has moved for a preliminary injunction against the Government which would require it to halt all work under the disputed contracts.

The Defense Supply Agency issued two Requests for Proposals calling for delivery of air conditioning units and associated equipment to fulfill a Marine Corps requirement. Both solicitations contemplated negotiated procurement. Negotiations closed on August 7, 1970, at 2:30 P.M. Both plaintiff and The Trane Company had submitted proposals under each solicitation. All of the proposals contained price reductions conditioned on the bidder receiving waiver of first article testing as called for in the solicitations. Offers made under RFP DSA 400–70–R–7921 were as follows:

| | *Plaintiff* | *Trane* |
| --- | --- | --- |
| First Article testing not waived | $69,600 | |

First Article testing $57,600 $61,163 waived

Waiver of first article testing was granted to Trane and denied to plaintiff. In this stature, based solely on price, the contract was awarded to Trane. Offers made under RFP DSA 400–70–R–7922 were as follows:

| | Plaintiff | Trane |
|---|---|---|
| First Article testing not waived | $378,550 | |
| First Article testing waived | $364,750 | $305,713 |

Subsequently plaintiff offered a price reduction of $21,550. Whether this modification was received in time for consideration is disputed. This contract was also awarded to Trane on its proposal with first article testing waived.

Plaintiff asserts three occurrences as grounds for protesting the awards made under these proposals. First, it claims that it was entitled to waiver of first article testing. If this waiver had been granted, plaintiff would have been the low bidder on proposal number 7921 but would still be higher than Trane on number 7922. Next plaintiff alleges that its price reduction offer on proposal 7922 was received in time to be considered a valid modification of its offer. This reduction in price does not, however, make plaintiff the low bidder on this proposal even if it is given first article waiver. Finally, plaintiff alleges that a meeting took place between Trane and government officials after the negotiations were closed but before the contract was awarded. At this meeting the Government confirmed Trane's technical proposal but no change in price or proposal was requested or made based on information given at this meeting.

■ Before discussing the merits of plaintiff's case it will be helpful to review the rights and remedies of an unsuccessful bidder for a Government contract. Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), established that an unsuccessful bidder has standing to bring suit in the district court. The scope of review by the Court and the remedy to be granted are not² at this point well defined. However, *Scanwell* held that the Administrative Procedure Act was applicable to these situations. Thus, the Court's function is to review final agency action. Such action may be set aside only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706. Determining the proper, reviewable, final action in a Government contract case is complicated by the presence of the General Accounting Office in this field. Historically the GAO has been the forum for bid protests. However, a Comptroller General opinon on the legality of a contract is not binding on the courts, United States ex rel. Brookfield Construction Co. v. Stewart, 234 F.Supp. 94 (D.D.C.1964), and the Comptroller cannot order award or termination of a contract. Thus, a protest to the GAO is not a prerequisite to judicial review of actions of the procuring agency. See Simpson Electric Co. v. Seamans, 317 F.Supp. 684 (D.D.C. September 29, 1970, Gesell, J.).

■ In the instant case the authority of the GAO bears not only on the scope of review but on the appropriateness of the remedy sought. Plaintiff alleges that it will be irreparably injured if the Government is not enjoined from proceeding with the contract as awarded since its appeal to the GAO will become futile if work under the contract proceeds too far since the Comptroller normally does not interfere with ongoing contracts. An injunction pending protest to the GAO is inappropriate since this Court has jurisdiction to decide the legality of the questioned contracts. Thus, the appropriateness of injunctive relief turns, in some measure on the final relief that this Court will grant.

■■ As mentioned above, plaintiff seeks injunction pending review by the Comptroller General, however, the ultimate relief sought is award of contract 7921 to plaintiff and setting aside of award under solicitation 7922 and reissue

of that solicitation. The authority of this Court to direct the award of a contract is supported by Superior Oil Co. v. Udall, 133 U.S.App.D.C. 198, 409 F.2d 1115 (1969), where the Court of Appeals affirmed an order of the District Court compelling the Secretary of the Interior to issue a lease to a bidder whom the Court held was entitled to the contract. In appropriate circumstances the Court may also exercise its injunctive powers. But injunctive relief is discretionary and its exercise should be determined according to the circumstances of the particular case in question.

It is important to note at this point that a major premise of *Scanwell* was that an unsuccessful bidder was in the best position to challenge government irregularities in the contract award system established under congressional guidelines. Thus, the underlying purpose of bringing bid protests into the district court is to protect the integrity of the bid process. Most of the cases so far presented to the Courts arose out of advertised procurement. By congressional direction this is the preferred method for letting Government contracts as it insures maximum price competition with the resultant benefits accruing to the Government. Deviation from this system is allowed in certain circumstances and the agency may negotiate such purchases as was done in this case, 10 U.S.C. § 2304. But the limitation of the area where negotiation is permitted and the regulations prescribing the methods of negotiation demonstrate that the integrity of the negotiated procurement procedures should be afforded similar protection. Since procurement officials are allowed wider discretion in negotiated procurement, the standard of review will differ from that used in advertised procurement. Protection may be achieved by actions less than the directed award of the contract and preliminary injunctive relief.

The contracts in question here are, although substantial, relatively small, routine military procurement contracts. When this litigation was instituted, the contracts had already been awarded and work begun. If performance is enjoined at this point, the Government will incur liability for costs under the Stop Work Order clause, ASPR 7–105.3(c), and possibly Termination damages. Traditionally, injunctive relief is granted to preserve the status quo pending determination on the merits. But an injunction in the present circumstances will not restore the status quo and the benefits derived from enforcement of the regulations of the procurement system may be outweighed by the liabilities incurred both by way of damages and by the inconveniences of issuing additional RFP's and establishing new timetables for proposals, award, delivery, etc. Furthermore, The Trane Company, which stands to suffer substantial loss in this action is not a party. In this situation only very serious governmental irregularities will support injunctive relief.

In light of the foregoing, the specific claims put forth by plaintiff will be examined. With respect to proposal number 7921, plaintiff claims that it was qualified for waiver of first article testing and that if such waiver had been granted, it would have been the low bidder and entitled to award of the contract. To be allowed first article waiver a bidder must show that the product it will supply has been tested and qualified under appropriate military specifications. Plaintiff contends it had produced and supplied similar air conditioners under Air Force contracts. Accordingly, DGSC contacted Kelly AFB concerning plaintiff's eligibility for waiver. The appropriate officer at Kelly found that a prior unit of the same capacity had been qualified but that a different brand of coils had been used than that plaintiff proposes for the present unit. Since this is a major component, the officer concluded that the present unit proposed by plaintiff was not qualified for waiver of first article testing.

Plaintiff had supplied identical units, using the same source of coils as in the present procurement as a subcontractor

under another Air Force contract. These units had been approved by the procuring facility at Wright-Patterson AFB but plaintiff had not yet received general qualification of them from Kelly AFB. Plaintiff had submitted test data on these units in order to receive qualification. These papers, which were in the hands of the officer at Kelly, were incomplete in that they lacked the signature of a government official who witnessed the tests. The officer decided that in these circumstances plaintiff did not qualify for first article waiver and so advised DGSC.

 The question to be resolved then is, whether the officer abused his discretion in not recognizing the limited qualification given the units under the Wright-Patterson contract or in failing to evaluate the available test material, and thereby attempting to cure such defects as the lack of signature, before declaring plaintiff ineligible. The procedures used by the Department of Defense in establishing eligibility for waiver of testing depend on the contractor having received prior qualification of his product. While it may appear advisable in close cases such as this to have the responsible officer take the additional steps necessary for qualification or to recognize the limited qualification held by the prime contractor as sufficient qualification for plaintiff, it does not appear that following the established procedures amounts to an abuse of discretion that would warrant setting aside the award. See, e. g., John Reiner & Co. v. United States, 325 F.2d 438, 440, 163 Ct.Cl. 381 (1963). This is particularly true where, as here, all bidders were subject to the same qualification test.

DGSC did not submit the question of plaintiff's eligibility for waiver under solicitation 7922 since plaintiff's proposal with waiver was priced higher than Trane's. With respect to this contract, plaintiff also contends that the government refused to consider a price modification for the reason that it was a late proposal when it was in fact timely submitted. Although the affidavits presented in support of this motion tend to support plaintiff's claim, this price reduction would still not alter the relative standings of plaintiff and Trane.

 Plaintiff's major objection to the procedures under solicitation 7922 is that the Government held a meeting with The Trane Company after close of negotiation and before award. At this meeting Trane's interpretation of the specifications were confirmed by the government representatives. Plaintiff contends that this discussion was in violation of the regulation prohibiting giving information to one bidder without providing other bidders the same information thus putting it in an inferior bidding position. Alternatively plaintiff alleges that this conduct violated the regulation requiring that the close of negotiations be the same for all bidders. Plaintiff does not allege that specific information was given Trane to aid it in preparing its proposal but rather that allowing Trane to receive confirmation of a technical proposal in advance of award which proposal is claimed to be not the reasonable and natural interpretation and in disregard of standards of material and workmanship established by military specifications analogously applicable, gives that bidder an unfair advantage. The facts remain, however, that the Government considered Trane's bid as binding before the meeting took place and Trane did not change or attempt to modify its price after the close of negotiations. If further investigation of this meeting reveals that it was prohibited by the regulations, it appears to be a minor deviation from the established procedures for negotiated procurement that does not warrant preliminary injunctive relief. Furthermore, establishing such a precedent might, bearing in mind that the concept of responsiveness is not applicable to negotiated procurement, deprive an inventive bidder of the advantage of devising an acceptable lower-cost method of satisfying government requirements.

In light of the foregoing, plaintiff's motion for preliminary injunction is denied. Since the matters discussed were presented at an expedited hearing on the motion for preliminary injunction, a declaration of the rights of the parties would be premature at this juncture.

This Memorandum will serve as the Court's findings and conclusions.