CINCINNATI ELECTRONICS COR-
PORATION, Plaintiff-
Appellant,

v.

Thomas S. KLEPPE, Administrator,
Small Business Administration,

and

Howard H. Callaway, Secretary of the
Army, Defendants-Appellees.

Nos. 73–2046 and 74–1170.

United States Court of Appeals,
Sixth Circuit.

Jan. 31, 1975.

Thomas S. Calder, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, Robert L. Ackerly, Joseph S. Wager, Sellers, Conner & Cuneo, Washington, D.C., for plaintiff-appellant in both cases.

William W. Milligan, U. S. Atty., Grayce M. Ruehlman, Cincinnati, Ohio, Byron Trapp, Robert E. Kopp, David M. Cohen, Carla Hills, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., for defendants-appellees in both cases.

Before PHILLIPS, Chief Judge, and CELEBREZZE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

This case presents consolidated appeals by an unsuccessful bidder for a government contract from two adverse rulings by the district court. On March 24, 1972 the Army issued invitations to bid on a multi-year procurement of radio sets. The invitations stated that 50 per cent of the total quantity would be set aside for award by negotiation to concerns located in labor surplus areas. First priority would be given to certified-eligible concerns which were also "small business concerns." The bids of eleven companies were opened on October 18, 1972. The apparent low bid was found to be nonresponsive and was rejected. The second low bid was that of Cincinnati Electronics Corporation (Cincinnati), and it was ultimately awarded a contract covering the non-set-aside portion of the procurement. On protest by another bidder, Cincinnati was found not to be a small business concern within the meaning of the applicable regulations. This ruling gave Cincinnati a lower priority than Sentinel Electronics, Inc. (Sentinel), and the set-aside portion of the procurement was awarded to Sentinel on June 13, 1973.

Upon being notified by the contracting officer on June 11, 1973 of his intention to award the set-aside contract to Sentinel, Cincinnati filed a protest against the award and requested the contracting officer to withhold making an award pending determination by the Small Business Administration (SBA) of the small business status of Sentinel. The protest was based upon information which Cincinnati had obtained from a trade magazine which indicated that Sentinel had entered into a "teaming agreement" with an Israeli concern which would disqualify Sentinel for preference as a small business concern. Prior to this time both the contracting officer and another bidder had obtained from SBA rulings that Sentinel continued to qualify as a small business concern and that the arrangement with the Israeli company did not disqualify it. A similar conclusion was reached by counsel for the Comptroller General of the United States when the denial of the protest filed by another unsuccessful bidder was appealed to that officer. The contracting officer neither forwarded Cincinnati's protest to SBA nor delayed making an award of the set-aside contract as requested in the protest. This suit was then filed in the district court.

In its complaint, Cincinnati sought review both of the decision of SBA that Cincinnati was not qualified for preferential treatment as a small business concern and of the action of the Secretary of the Army, acting through the contracting officer, in refusing to forward its protest of Sentinel's small-business-concern status to SBA and in awarding the set-aside contract to Sentinel without awaiting the outcome of Cincinnati's protest. The district court did not reach the issue of Cincinnati's qualification as a small business concern because of the manner in which the case proceeded. The court entered a temporary restraining order against the defendant Callaway and set a hearing on Cincinnati's motion for a preliminary injunction. No injunctive relief was sought against the administrator of SBA, and thus the issue with respect to determination of Cincinnati's status as a small business concern was not involved in the injunction proceedings. The district court denied the motion for a preliminary injunction and filed an opinion setting forth his findings and conclusions. An appeal was taken from the order denying the injunction pursuant to 28 U.S.C. § 1292(a)(1). Thereafter the court entered a final judgment of dismissal of the defendant Callaway "on the claims that the Contracting Officer violated the Armed Services Procurement Regulations in awarding the set-aside portion of the procurement contract to Sentinel Electronics, Inc." In this order, the court made the required determination under Rule 54(b), Fed.R.Civ.P., that there is no just reason for delay and the alternative certification under 28 U.S.C. § 1292(b) that the order involves controlling questions of law as to which there is substantial ground for difference of opinion and an immediate appeal might materially

advance the ultimate termination of the litigation. Cincinnati filed a separate appeal from this judgment, and the two appeals were consolidated for hearing and decision. The claims in the complaint against the administrator of SBA are pending in the district court.

## THE ISSUE OF STANDING

At the outset, the court is faced with the contention of the government that Cincinnati had no standing to obtain judicial review of the Army's action in awarding the set-aside portion of the procurement to Sentinel. Obviously, if this argument is correct, we will not reach the merits of the case. In Perkins v. Lukens Steel Company, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), the Supreme Court held that bidders for government contracts have no standing in a federal court to obtain a declaratory judgment and injunction restraining officials and agents of an executive department with respect to public contracts. The Court found that no legal rights of the plaintiffs in that case had been invaded or threatened and that "neither damage nor loss of income in consequence of the action of Government, which is not an invasion of recognized legal rights, is in itself a source of legal rights in the absence of constitutional legislation recognizing it as such." The Court further held that such bidders do not have standing to "vindicate any general interest which the public may have in the construction of the Act by the Secretary and which must be left to the political process. Respondents, to have standing in court, must show an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law." Id. at 125, 60 S.Ct. at 875.

The Court pointed out that the Public Contracts Act, under which the plaintiffs sought to proceed, "embodies the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexatious and dilatory restraints at the suits of prospective or potential sellers. It was not intended to be a bestowal of litigable rights upon those desirous of selling to the Government; it is a self-imposed restraint for violation of which the Government—but not private litigants— can complain." Id. at 127, 60 S.Ct. at 876. At the conclusion of the opinion, Mr. Justice Black, disclaiming that the standing issue rested upon a technicality, wrote, "We rest it upon reasons deeply rooted in the constitutional divisions of authority in our system of Government and the impropriety of judicial interpretations of law at the instance of those who show no more than a mere possible injury to the public." Id. at 132, 60 S.Ct. at 879. Perkins v. Lukens Steel Company has never been reversed by the Supreme Court nor alluded to in the later cases hereinafter cited dealing with the issue of standing in different contexts.

Cincinnati contends that the authority of *Lukens Steel* has been eroded by subsequent decisions of the Supreme Court and by congressional action. In Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), the Court pointed out that little value is to be gained from generalizations about standing to sue in the federal courts. Beyond the constitutional requirement that there be an actual "case" or "controversy" the first inquiry is "whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise." If this standard is met, the court must then determine "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Id. at 152–153, 90 S.Ct. at 830. The Court further stated that the question of whether a plaintiff has a "legal interest" conferred by a statute or regulation whose violation has caused him to seek judicial review of administrative action goes to the merits of the case and is not an issue in determining whether plaintiff has standing to sue.

In Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), the Court found that a group of plaintiffs clearly belonged within the zone of interests protected by a statute because they were "persons aggrieved by agency action within the meaning of a relevant statute," language quoted from Section 10 of the Administrative Procedure Act (APA), 5 U.S.C. § 702. The Court cautioned that the determination of whether a particular agency action is reviewable involves the often difficult task of finding congressional intent, and that an intent to preclude judicial review may be either found in express language or inferred, but should not be lightly inferred. *Id.* at 166, 90 S.Ct. 832.

In Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), the Supreme Court dealt with cases where plaintiffs claimed noneconomic injury as the result of agency action. In *Sierra Club,* the Court recognized that noneconomic injuries to interests that are widely shared may be alleged in support of standing, but pointed out that this broadening of the categories of injuries "is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." 405 U.S. at 738, 92 S.Ct. at 1368. The Court discussed the difference between situations where a plaintiff relies on a specific statute authorizing judicial review and those where no such statute exists. In both *Sierra Club* and the present case, the plaintiffs relied on specific statutes. Dealing with this situation the Court stated, "Where, however, Congress has authorized public officials to perform certain functions according to law, and has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with the determination of whether the statute in question authorizes review at the behest of the plaintiff." 405 U.S. at 732, 92 S.Ct. at 1364 (footnote omitted). Noting that the Sierra Club relied upon Section 10 of APA, 5 U.S.C. § 702, the Court

then reiterated the requirements under this statute as formulated in Data Processing Service v. Camp, *supra,* and Barlow v. Collins, *supra,* that is, the existence of an "injury in fact" and injury to an interest "arguably within the zone of interests to be protected or regulated" by the statutes which it is claimed have been violated by an agency. The Court found that the Sierra Club lacked standing because it had not alleged that it suffered injury itself from the agency actions which it questioned. On the other hand, in United States v. SCRAP, *supra,* the plaintiff, which was also a public interest group, was found to have brought itself within the requirement of 5 U.S.C. § 702 that it be "adversely affected" or "aggrieved" by agency action.

Holding that the law of standing was greatly modified by the passage of the Administrative Procedure Act, especially Section 10 (5 U.S.C. § 702), the Court of Appeals for the District of Columbia held in Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970), that the second low bidder for a government contract had standing to seek judicial review of a contract award. While recognizing that the plaintiff had no right to have the contract awarded to it in the event the court should find illegality in the award to the low bidder, the court nevertheless held that a disappointed bidder suffers sufficient injury as the result of illegal government action to provide standing. The court reasoned that such a plaintiff, while seeking to vindicate his own very real interests, brings the suit in the public interest and that "the essential thrust . . . on the merits is to satisfy the public interest in having agencies follow the regulations which control government contracting." Such a plaintiff is treated as a "private attorney general." *Id.* 424 F.2d at 864. The court of appeals discounted the continuing authority of Perkins v. Lukens Steel Company, *supra,* on the ground that it was decided before the passage of APA and before amendment of the Public Contracts Act. The legislative history of the relevant amendment to the Public Contracts Act

was set forth in the opinion, in particular the statements of Senator Fulbright that the purpose of the amendment was to overturn the decision in *Lukens Steel.* This reasoning is persuasive with respect to the Public Contracts Act, but does not necessarily dispose of the question when procurement is being made under other statutes.

At least two other circuits have adopted the *Scanwell* rationale and now permit suits by disappointed bidders which seek to set aside awards to competing bidders and enjoin execution of proposed contracts. Merriam v. Kunzig, 476 F.2d 1233 (3d Cir. 1973); Wilke v. United States, 485 F.2d 180 (4th Cir. 1973). In *Merriam,* the plaintiff was a landlord who already had government tenants and was about to lose them because of an allegedly illegal award of a new lease to his competitor. The court held that he had suffered sufficient injury in fact to permit him to seek to vindicate the rights of the public as well as his own and that his interest was within the zone of interests of the procurement statute under which he made his bid. Since the district court had dismissed the complaint for lack of standing, the court of appeals did not reach the issue of the harmful effect of injunctive interference with executive decisions. In *Wilke,* the court of appeals affirmed the granting of a declaratory judgment. In approving the denial of an injunction to the disappointed bidder it noted that the plaintiff could seek recovery of bid preparation costs in the Court of Claims. 485 F.2d at 182.

In other cases decided since *Data Processing* and *Barlow,* this court in Pace Company, Division of AMBAC Industries, Inc. v. Resor, 453 F.2d 890 (1971), cert. denied, 405 U.S. 974, 92 S.Ct. 1192, 31 L.Ed.2d 248 (1972); the Ninth Circuit in Hi-Ridge Lumber Company v. United States, 443 F.2d 452 (1971); and the Fifth Circuit in Campbell Company v. Wood Construction Company, 446 F.2d 261 (1971), have noted the present uncertain-

ty of the issue of standing by an unsuccessful bidder for a government contract, but have not addressed the issue. In Campbell Company v. Wood, *supra,* the district court had denied injunctive relief and the only question before the court of appeals concerned a size determination by SBA. The court of appeals found standing as to this issue in the pertinent statutes. This is the same issue which is now pending in the district court in the present case.

▆▆▆ We believe the positions of the plaintiff Cincinnati and the defendant Secretary of the Army are sufficiently adverse to create a "case" or "controversy" within the meaning of Article III of the Constitution. Beyond this it is clear that Cincinnati has alleged an "injury in fact." Having made this determination, we are required by the decision in Sierra Club v. Morton, *supra,* next to examine the statutes under which Cincinnati seeks relief to determine whether they contemplate judicial review "at the behest of the plaintiff." *Id.* 405 U.S. at 732, 92 S.Ct. 1361. The statutes relied upon by the plaintiff are Section 10 of APA and the Armed Service Procurement Act of 1947, 10 U.S.C. §§ 2301–2314 (the Act). We first consider Section 10 of APA, 5 U.S.C. § 702, which provides as follows:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

This leads to consideration of 10 U.S.C. §§ 2301–2314,[1] which is the "relevant statute" for purposes of this case and of regulations issued by the Department of Defense pursuant to this statute which have the force of law. These regulations, known as Armed Services Procurement Regulations (ASPR), are codified in Title 32 of the Code of Federal Regulations.

▆▆ We find no provision of the Act which indicates a congressional intent

---

1. This Act deals generally with procurement by the armed forces with detailed provisions

concerning advertising, opening of bids, types of contracts permitted and similar subjects.

that every unsuccessful bidder shall have the right to judicial review of agency actions taken pursuant to the statute. Although the regulations provide for extensive administrative review and appeal to the Comptroller General of the United States, they are silent on the subject of judicial review. It is also noted that the statute grants broad discretion by providing that all bids received as the result of formal advertising "may be rejected if the head of the agency determines that rejection is in the public interest." 10 U.S.C. § 2305(c). However, there is no expressed intent to preclude judicial review of agency actions. This leads to a determination of whether the interest which Cincinnati is seeking to protect in this action "is arguably within the zone of interests" protected or regulated by the Act. Data Processing Service v. Camp, *supra,* 397 U.S. at 153, 90 S.Ct. at 830. Cincinnati maintains that the contracting officer violated ASPR 1–703(b)(1)(a) which requires that he "shall immediately forward" Cincinnati's protest relating to Sentinel's size to SBA, and that he violated ASPR 1–703(b)(5) which prohibits the contracting officer from making an award pending consideration by SBA of the protest. It is significant that the issue between Cincinnati and the Secretary of the Army revolves around the alleged failure of the Secretary's representative to follow regulations which establish the procedure for handling protests of small business status in view of the fact that the Act opens with this "Declaration of Policy":

> It is the policy of Congress that a fair proportion of purchases and contracts made under this chapter be placed with small business concerns. 10 U.S.C. § 2301.

This statement indicates a "zone of interests" sought to be protected by the Act. We hold that an unsuccessful bidder under this Act who alleges that it is a small business concern and that an agency representative has acted illegally in failing to follow regulations designed to implement the congressional policy of awarding a fair proportion of contracts under the Act to small business concerns has standing to seek judicial review of such actions pursuant to 5 U.S.C. § 702.

■ We cannot infer a congressional intent to preclude judicial review of agency actions which are alleged to have subverted a clearly stated declaration of policy. In reaching this conclusion, we do not hold that Section 10 of the APA confers standing on every disappointed bidder for government contracts to seek review of agency action. Indeed, in view of the underlying reasons given by Mr. Justice Black for the holding in *Lukens Steel,* we are unable to discover a basis for departure from it. Rather, we view the present case as dealing with an exception recognized in *Lukens Steel,* 310 U.S. at 125, 60 S.Ct. 869, where Congress has by "constitutional legislation" recognized the legal right of a bidder for government contracts to benefit from the policy of granting a fair share of such contracts to small business concerns. Standing is conferred by Section 10 only when a relevant statute indicates congressional intent that the person or firm seeking review comes within the zone of interests sought to be regulated or protected. Absent such a congressionally created exception, the general rule of Perkins v. Lukens Steel, *supra,* that a disappointed bidder has no legally enforceable right against the government's award of a procurement contract retains its validity.

## THE MOTION TO DISMISS

The first issue on the merits relates to the government's position that Cincinnati does not possess the requisite "legal interest" to bring the suit and that its complaint fails to state a claim upon which relief may be granted. As one claiming small-business-concern status for itself and contesting that status in another bidder, Cincinnati has alleged the required "legal interest" for its complaint to withstand a motion to dismiss.

## THE SUBSTANTIVE ISSUES

■ In No. 73–2046, the appeal from denial of a preliminary injunction, the

*judgment of the district court is affirmed.* The district court applied the correct criteria to this motion and determined that the plaintiff was unlikely to prevail ultimately in the law suit, would suffer no irreparable injury in the event the injunction were denied and had an adequate remedy at law. We find no abuse of discretion in the denial of the motion for preliminary injunction.

■ The appeal in No. 74–1170 results from the district court's holding that Cincinnati's protest of Sentinel's size determination was not timely filed with the contracting officer and therefore the contracting officer had no duty either to forward the protest to the SBA or to withhold the award to Sentinel pending consideration of the protest. From this determination it was concluded that the plaintiff had failed to show any wrongful act by the Army, and the district court dismissed the Secretary on the merits. The question is whether the action of the defendant Callaway in awarding the contract to Sentinel under these circumstances was "arbitrary, capricious . . . or otherwise not in accordance with the law" [5 U.S.C. § 706(2)(A)] as charged in the complaint. Following prescribed procedures, the contracting officer, as representative of the Secretary, had obtained determinations from the SBA that Cincinnati was not qualified as a small business concern and that Sentinel was so qualified. It is provided in 15 U.S.C. § 637(b)(6), in part that:

> Offices of the Government having procurement or lending powers, or engaging in the disposal of Federal property or allocating materials or supplies, or promulgating regulations affecting the distribution of materials or supplies, shall *accept as conclusive the* [Small Business] *Administration's determination* as to which enterprises are to be designated "small business concerns", as authorized and directed under this paragraph; . . . (emphasis added).

Required by law to accept these determinations as conclusive, the contracting officer cannot be held to have acted capriciously or arbitrarily in awarding the set-aside contract in this case to Sentinel.

This leaves the question whether his action was "otherwise not in accordance with law." A contracting officer's duty to forward a timely protest to SBA is governed by 32 CFR § 1.703(b)(1)(a) which provides as follows:

> *(a) Timely protest received prior to award.* When the contracting officer receives a timely protest prior to award, he shall forward the protest record to the Small Business Administration district office serving the area in which the protested concern is located. The Small Business Administration will promptly notify the contracting officer and the protestant of the date of its receipt of any such protest and will advise the bidder or offeror in question that his small business status is under review.

The protest was received by the contracting officer prior to the award of the set-aside portion and one day after the contracting officer notified Cincinnati of his intention to make the award to Sentinel. The regulations set forth the time limitations for filing protests. 32 CFR § 1.703(b)(1) provides that a protest which questions "the small business status *of an apparently successful bidder or offeror* . . . must be received by the contracting officer prior to the close of business on the fifth working day . . . after bid opening date for formally advertised and small business restricted advertised procurements. In procurements requiring submission of proposals, the contracting officer shall, . . . notify the apparently unsuccessful offerors in writing of the name and location *of the apparently successful offeror(s)* and establishing a deadline (at least five working days plus a reasonable time for the notice to reach the unsuccessful offerors) by which any size protest on the instant procurement must be received." (emphasis added) The contracting officer considered this entire transaction to be a formally advertised

procurement. Since the protest was filed much later than five days after the bid opening, he treated it as untimely. The district court agreed with his determination.

 Cincinnati claims that the set-aside portion of the procurement in question was "negotiated" and therefore it had at least five days from the time it was notified that Sentinel was the apparently successful offeror. It points to the fact that the invitation to bid referred to negotiations for award of the set-aside portion in a number of places. This assumes that the use of the word "negotiation" in connection with the award of the set-aside contract is equivalent to the language in the regulations, "procurements requiring submission of proposals." The regulations dealing with the time of filing a size protest do not use the words "negotiations" or "negotiated." We note that under the terms of the invitation to bid the only bids that would be considered responsive were those which established a unit price both for the non-set-aside and the set-aside portions of the contract. Further, no one would be permitted to negotiate for the set-aside portion who had not bid on the non-set-aside portion. Since all negotiations for the set-aside portion would necessarily be with the same persons whose bids were publicly opened, each eligible negotiator would know the identity of every other eligible person or firm. This is quite different from the situation of a procurement based on submission of proposals. In such a case there is no public opening and an unsuccessful bidder would not know the identity of his competitors. The district court held that the set-aside portion of the procurement was not negotiated in the usual sense and that Cincinnati's protest was not timely.

The reasoning would be persuasive if the period for filing a protest contained in the regulations were measured from the time when the mere identity of the other bidders or offerors became known to the protestant. That is not the case. It is clear that time does not begin to run until the protestant knows the identity of the "apparently successful bidder or offeror." The scheme of the regulations is to permit size protests only against apparently successful bidders and offerors and to provide a short, but reasonable time for filing them. When the bids for the non-set-aside portion of this procurement were opened, Sentinel was not the apparently successful bidder. Therefore, a protest relating to its size would not have been within § 1.703(b)(1).[2] Only after the contracting officer notified Cincinnati that he was treating Sentinel as the apparently successful offeror by proposing to award the set-aside contract to it was Cincinnati in position to file a protest under § 1.703(b)(1). Having thus received a timely "size" protest, the contracting officer was required to forward it to SBA and withhold the awarding of the set-aside contract pending disposition thereof. While the district court based its holding on the conclusion that the protest was not timely, it mentioned the possibility that the protest might have been considered deficient for other reasons, but made no finding or conclusions with respect to these matters, and we do not consider them.

 Though it is necessary to reverse the judgment dismissing the defendant Callaway, consideration must be given to the question of what relief should be granted Cincinnati. The record in this case does not support the issuance of an injunction as requested in the complaint.

2. The Office of the Comptroller General is apparently in agreement with this reading of the regulations. The Deputy General Counsel, in his cover letter of March 12, 1973 to the Comptroller General, enclosing the proposed administrative report on Bristol Electronics' protest of Sentinel, noted that it appeared "that this protest, since it relates to the status of the third low bidder, is at present premature." At that time, nearly three months before the award of the set-aside portion of the procurement, Sentinel was only the third low bidder. Not then, nor at any other time prior to announcement of the proposed set-aside award on June 11, was Sentinel "an apparently successful bidder or offeror" against which a timely protest could be filed.

This is so for a number of reasons. In the first place, Cincinnati has not shown that it has suffered or will suffer irreparable loss or injury. Although Cincinnati bid on the entire procurement on the assumption that if it were the successful bidder on the non-set-aside portion it would thereafter be awarded the contract for the remainder, such a result was not certain. The ultimate decision on whether to grant an award of this contract to Cincinnati or some other firm remained a matter in the discretion of the government. If it is finally determined that the contract was illegally awarded to Sentinel, Cincinnati has no right to have the contract awarded to it. See Scanwell Laboratories, Inc. v. Shaffer, *supra*, 424 F.2d at 864.

The only recognized loss which Cincinnati or any other unsuccessful bidder sustains is the cost of preparation of bids or proposals. These costs may be recovered in an action in the Court of Claims. M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289, 1302 (1971); Keco Industries, Inc. v. United States, 428 F.2d 1233, 1240, 192 Ct.Cl. 773 (1970); Robert F. Simmons and Associates v. United States, 360 F.2d 962, 964, 175 Ct.Cl. 510 (1966); Heyer Products Co. v. United States, 177 F.Supp. 251, 252, 147 Ct.Cl. 256 (1959). Thus there is an adequate remedy available, and this is the second reason for denying an injunction.

Finally, in every case such as this where injunctive relief is sought a court must balance the public interest in having a government procurement process which can be administered without disruptive court-ordered restraints against the interests of the party seeking the injunction. See M. Steinthal & Co. v. Seamans, *supra*, 455 F.2d at 1301. Compare Wilke v. United States, *supra*. Though an unsuccessful bidder must have suffered an "injury in fact" to have standing to bring an action for judicial review of an award, the "essential thrust" of its claims "is to satisfy the public interest in having agencies follow the regulations which control government contracting." *Scanwell, supra,* 424 F.2d at 864. We believe the public interest is best served by issuing a declaratory judgment concerning the actions of the contracting officer in this case, but denying injunctive relief.

The judgment in No. 74–1170 is reversed for further proceedings as indicated herein.