**NORTH CONSTRUCTION COMPANY, a Michigan Corporation, Plaintiff,**

v.

**Francis T. MAYO, Regional Administrator, Region 5, United States Environmental Protection Agency, Board of Public Works, Calhoun Co., Michigan, City of Albion, Michigan, Defendants.**

**No. G–75–560 CA.**

United States District Court,
W. D. Michigan, S. D.

Dec. 23, 1975.

Lawrence L. Buollen, Jackson, Mich., for plaintiff.

James C. Kingsley, Albion, Mich., James M. Sullivan, Battle Creek, Mich., for defendants.

## OPINION ON MOTION FOR PRELIMINARY INJUNCTION

MILES, District Judge.

This case is presently before the Court on plaintiff's motion for preliminary injunctive relief. The plaintiff, North Construction Co. seeks to overturn a determination by the Environmental Protection Agency that it was not entitled to be awarded a contract for the construction of a secondary sewage treatment plant, and to enjoin the award of the contract to another bidder. The project planned to be located in Albion, Michigan was undertaken by the Calhoun County Board of Public Works and financed in large measure (75%) by a grant from the Environmental Protection Agency, pursuant to the Federal Water Pollution Control Act, Amendments of 1972, specifically 33 U.S.C. § 1282.

The bid proposal for the project consisted of three parts: a single lump sum for a number of items; unit price bids for 19 items of work; and unit prices for three contingent items which had no effect on the total of the bid. Plaintiff tendered a bid, which was revealed to be the lowest of those submitted. At the same time it was

discovered that plaintiff had not submitted *unit* prices for a number of the items of the bid proposal. Thereafter, North promptly prepared the complete submission, certifying the same to the Board of Public Works within 25 hours of the bid opening. The Board of Public Works determined that these omissions rendered the North bid unresponsive on August 4, 1975, and awarded the contract to the next lowest bidder, Associated Mechanical Services. The City Council of Albion concurred on August 6, 1975. Thereupon, North filed a protest with the Environmental Protection Agency pursuant to the provisions of 40 CFR 35.-939(a) contending that this was only an inadvertent oversight without substantial effect upon the bid. The parties then followed the procedure set forth in the E.P.A. regulations, which culminated in the administrative ruling at issue here.

After a meeting between the parties, the Director of the Board of Public Works forwarded to North a statement explaining why the bid was considered to be unresponsive. This was followed by the submission of a letter from the project consulting engineers and a legal opinion from the County Prosecutor, both of the effect that North's bid was neither complete nor responsive.

On September 19, 1975, North filed a Request for Review as provided for in 40 CFR 35.939(b), along with a brief and other documents. Submissions by the other parties followed, and on November 13, 1975, the Regional Administrator upheld the Board's decision to reject North Construction's "bid." This suit followed initiated on November 24, 1975 by way of a request for a Temporary Restraining Order. On that date, a Temporary Restraining Order and Order to Show Cause were issued restraining defendants from consummating this contract, and setting a date for a hearing. In preparation for the hearing, briefing was received from all parties, along with a motion to intervene by Associated Mechanical Services, the successful, although not the lowest bidder.

On the appointed hearing date, there being no objection, and the Court having determined that the addition of Associated Mechanical Services would not delay or prejudice the rights of the parties already in the case, the motion to intervene by Associated was granted. The Court then heard oral argument on the instant motion and continued from the bench the current restraining order, pending its ruling on the motion.

Plaintiff's case rests upon the allegation that the E.P.A. violated its own regulations in its ruling thereby depriving plaintiff of its constitutional due process rights, and providing this Court the power under the Administrative Procedure Act to review and overturn the Regional Administrator. Defendants argue that the failure to submit unit prices rendered the bid a nullity, that this defect was indeed substantial and that all the defendants were fully justified in rejecting it.

In assessing this request for injunctive relief, we are obligated to keep in mind that while the grant of a preliminary injunction rests in the Court's sound judicial discretion, injunctive relief is an extraordinary remedy and should be rendered with great caution. *Corning Glass Works v. Lady Cornella, Inc.*, 305 F.Supp. 1229 (E.D. Mich. 1969). 7 Moore's Federal Practice ¶ 65.04(1).

The Sixth Circuit has repeatedly set forth the criteria to be applied in an application for a preliminary injunction. Plaintiff must show (1) that his case has the higher probability of success on the merits; (2) that his damages are irreparable; (3) that the balance of injury favors grant of the injunction; and (4) that injunctive relief is in the best interest of the public. *Garlock Inc. v. United Seal, Inc.*, 404 F.2d 256 (6th Cir. 1968); *Cincinnati Electronics Corp. v. Kleppe*, 509 F.2d 1080 (6th Cir. 1975), 11 Wright and Miller, Federal Practice and Procedure § 2948. Applying these guidelines to the instant case, plaintiff's first task is to convince the Court of the likelihood that the Regional Administrator's ruling will not stand the scrutiny of full judicial review. The case law instructs that in reviewing this type of administrative de-

termination, the standard is that of "arbitrary, capricious . . . or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). *Cincinnati Electronics Corp.,* supra, *Keco Industries v. Laird,* 318 F.Supp. 1361 (D. D.C. 1970).

This standard has been held to mean that:

"A court has no warrant to set aside agency action as arbitrary or capricious when those words mean no more than that the judges would have handled the matter differently had they been agency members. Judicial intervention must, instead, be rested upon a demonstration that the agency action has transgressed the statutory boundaries."

*Calcutta East Coast of India and East Pakistan/USA Conference v. Federal Maritime Commission,* 130 U.S.App.D.C. 261, 399 F.2d 994, 997 (1968), quoted in *M. Steinthal & Co. v. Seamans,* 147 U.S.App.D.C. 221, 455 F.2d 1289, 1299 (1971).

Quoting from a number of points in the E.P.A. ruling, North's central contention is that the Regional Administrator utilized an improper burden of proof, in violation of the Agency's regulations. E.P.A. regulations spell out the general policies governing the award of contracts under the Federal Water Pollution Control Act Amendments, along with many of the details of the award process:

§ *35.938–2  Performance by contract.*

It is the policy of the Environmental Protection Agency to encourage free and open competition with regard to project work performed by contract. The project work shall be performed under one or more contracts awarded by the grantee to private firms, except for force account work authorized by § 35.935–2 . .

§ *35.938–3  Type of contract.*

Each contract shall be either a fixed-price (lump sum) contract or fixed-rate (unit price) contract, or a combination of the two, unless the Regional Administrator gives advance written approval for the grantee to use some other method of contracting. The cost-plus-a-percentage of cost method of contracting shall not be used.

§ *35.938–4  Formal advertising.*

\*　　\*　　\*　　\*　　\*　　\*

(c) *Adequate bidding documents.* A reasonable number of bidding documents (invitations for bid) shall be prepared by grantee and shall be furnished upon request on a first-come, first-served basis. A complete set of bidding documents shall be maintained by grantee and shall be available for inspection and copying by any party. Such bidding documents shall include:

(1) A complete statement of the work to be performed, including necessary drawings and specifications, and the required completion schedule. (Drawings and specifications may be made available for inspection instead of being furnished.);

(2) The terms and conditions of the contract to be awarded;

(3) A clear explanation of the method of bidding and the method of evaluation of bid prices, and the basis and method for award of the contract;

(4) Responsibility requirements or criteria which will be employed in evaluating bidders; *Provided,* That an experience requirement or performance bond may not be utilized unless adequately justified under the particular circumstances by the grantee;

\*　　\*　　\*　　\*　　\*　　\*

(f) *Bid modifications.* A firm which has submitted a bid shall be allowed to modify or withdraw its bid prior to the time of bid opening.

(g) *Public opening of bids.* Grantee shall provide for a public opening of bids at the place, date and time announced in the bidding documents.

(h) *Award to the low responsive, responsible bidder.* (1) After bids are opened, they shall be evaluated by grantee in accordance with the methods and criteria set forth in the bidding documents.

(2) Unless all bids are rejected, award shall be made to the low, responsive, responsible bidder.

(3) If award is intended to be made to a firm which did not submit the lowest bid, a written statement shall be prepared prior to any award and retained by the grantee explaining why each lower bidder was deemed not responsive or nonresponsive.

The Regulations also set forth the duties of both parties to the grant, and what each must do when a bidder protests:

§ 35.939 *Compliance with procurement requirements.*

(a) *Grantee responsibility.* The grantee is primarily responsible for selecting the low, responsive, and responsible bidder in accordance with applicable requirements of State, territorial, or local laws or ordinances, as well as the specific requirements of Federal law or this subchapter directly affecting the procurement (for example, the nonrestrictive specification requirement of § 35.935–2(b) or the equal employment opportunity requirement of § 35.935–6) and for the initial resolution of complaints based upon alleged violations. If complaint is made to the Regional Administrator concerning an alleged violation of Federal law or this subchapter in the procurement of construction services or materials for a project involving Step 3, the complaint will be referred to the grantee for resolution. The grantee must promptly determine each such complaint upon its merits permitting the complaining party as well as any other interested party who may be adversely affected, to state in writing or at a conference the basis for their views concerning the proposed procurement. The grantee must promptly furnish to the complaining party and to other affected parties, by certified mail, a written summary of its determination, substantiated by an engineering and legal opinion, providing a justification for its determination. See paragraph (c) of the section for applicable time limitations.

(b) *Regional Administrator responsibility.* A party adversely affected by an adverse determination of a grantee made pursuant to paragraph (a) of this section, concerning an alleged violation of a specific requirement of Federal law or this subchapter directly affecting the procurement of construction services or material for a project involving Step 3 may request the Regional Administrator to review an adverse determination, subject to the time limitation set forth in paragraph (c) of this section. A copy of the written adverse determination and supporting justification shall be transmitted with the request for review, together with a statement of the specific reasons why the proposed grantee procurement action would violate Federal requirements. The Regional Administrator will afford both the grantee and the complaining party, as well as any other interested party who may be adversely affected, an opportunity to present the basis for their views in writing or at a conference, and he shall promptly state in writing the basis for his determination of the protest.

North's allegation of error on the part of the Regional Administrator is based on the sentence following the above quoted material which provides:

"If the grantee proposes to award the contract or to approve award of a specified sub-item under the contract to a bidder other than the low bidder, the grantee will bear the burden of proving that its determination concerning responsiveness of the low bid is in accordance with Federal law and this subchapter."

North argues that throughout the Administrator's decision he improperly indulged in the presumption that the Board of Public Works acted properly. This had the effect, according to North, of placing the burden of proof upon it rather than the other way around.

After summarizing the facts and concluding that there was no real dispute on those facts, the Administrator set out to frame the issue:

"The issue before the Regional Administrator for determination may be set forth as follows: Does the determination by the Calhoun County Board of Public Works that the North Construction Com-

pany Proposal on Contract 3, Secondary Treatment Plant for Albion, Michigan, was nonresponsive conflict with any specific requirement of Federal law or of 40 CFR Part 35, Subpart E?" (Exhibit A to Complaint, p. 3)

In reviewing the federal requirements, the Administrator stated:

"The low bidder must also be responsive and responsible and it is the grantee's responsibility to determine if both these elements are present in a bid submission. 40 CFR 35.939(a). If his determination as to either responsiveness of a bid or responsibility of the bidder is not inconsistent with the provisions of Federal law or 40 CFR Part 35, Subpart E. then I must uphold such determination . . .

Federal courts have cautioned against waiving defects in a bid relating to 'conformity with the invitation.' Such defects are generally considered not curable after bid opening because a bidder who omitted a necessary item in his bid might choose to do nothing to remedy the situation, thus giving him an opportunity to opt out without penalty if his bid was too low—an opportunity not available to bidders who completed their Proposals correctly." *Northeast Construction v. Romney* [157 U.S.App. D.C. 381], 485 F.2d 752 (D.C. Cir. 1973). Id. p. 5.

The Regional Administrator then concluded:

"In the interest of preserving the competitive nature of the procurement process, I therefore decline to overrule the decision of the Calhoun County Board of Public Works to reject the North bid on Contract No. 3 as non-responsive. Based upon the information presented to this Agency, it does not appear that grantee specifically violated pertinent Federal law or the requirements of the applicable sub-chapter. This determination is final pursuant to my responsibilities under the terms of 40 CFR 35.939(b). Grantee is hereby advised that it must defer award of the contract in this matter until ten (10) days after it receives this determination, in accordance with 40 CFR 35.-939(d)." Id.

■ This ruling has been carefully reviewed in light of the standard of review stated hereinabove and we cannot conclude that this was an arbitrary or capricious use of administrative prerogative. On its face the ruling demonstrates rather clearly that the Regional Administrator made a serious effort to follow the procedure of 40 C.F.R. § 35.939(b), and to give reasoned and careful consideration to the arguments raised by both sides. The statement of the issue in terms of "conflict with any specific requirement of Federal law" conforms to that set forth in 40 C.F.R. § 35.939. We detect no presumption of regularity on the part of the defendant Board arising from this choice of wording. In fact, the exact opposite appears to be the meaning most readily gleaned from this passage. It cannot be concluded that there has been, in the words of the *Calcutta East Coast* case, any "demonstration that the agency action has transgressed the statutory boundaries".

Furthermore, a closer examination of the bid process compels a finding that the omissions were indeed substantial. The conditions set forth in the bid proposal itself lend force to this conclusion:

*A–3.04 Preparation of Proposal*

The Bidder's Proposal shall be submitted on the Proposal Form above defined. All blank spaces in the Proposal must be filled in correctly, where indicated, including the number of Days to complete The Work, and for each and every Item for which an estimated quantity is given, the Bidder must state the price (written in ink) for which he proposes to do each Item of The. Work contemplated. In all unit price Items the Bidder shall fill in the unit price bid for each Item and in addition thereto make an extension based on the estimated quantities. In case of incorrect totaling of amounts or where the unit bid price and extension do not agree, the unit bid price shall govern and the Owner shall be authorized to make the correct extension and/or total for the purpose of comparing Bids. In case of a discrepancy between

the prices indicated in figures and in written words, the written words shall govern.

\*    \*    \*    \*    \*    \*

### A–3.10  Rejection of Proposals

Proposals may be rejected if they show any alterations of forms, additions not called for, conditional or alternative bids, incomplete bids, or irregularities of any kind. The Owner reserves the right to waive any informalities in the Proposal and to reject any or all bids.

Michigan case law provides further guidance on what constitutes a substantial defect in a bid. In *Pascoe v. Barlum,* 247 Mich. 343, 225 N.W. 506 (1929), the Court states at p. 346, 225 N.W. at p. 507:

"But not every variation from the specifications will destroy the competitive character of the bid. To have that effect, the variation must be substantial. To be substantial, it must affect the amount of the bid. It must give the bidder an advantage or benefit not allowed to other bidders. It must be an element considered in fixing the price."

As has already been pointed out, the *unit* prices form a major component of the overall bid. In addition, since they are based on estimated quantities (See Bid Proposal Section A–3.04, supra), the cost of these items is not yet firm. Thus, it clearly appears that these *unit* prices both "affect the amount of the bid," and are "an element considered in fixing the price."

This Court recognizes that denial of this injunction is very likely to leave plaintiff without a further remedy in state court. *Talbot Paving Co. v. City of Detroit,* 109 Mich. 657, 67 N.W. 979 (1896); *Malan Construction Corp. v. Board of County Road Comm.,* 187 F.Supp. 937 (E.D. Mich. 1960). In recognition of that fact, the Court has considered the substantive merit to plaintiff's claim with great care. Moreover, the Court has balanced such fact against public interest and the potential effects of the requested injunction upon the governmental procurement process. While dealing with a contract let by the federal government, the *Cincinnati Electronics* case *supra*

is instructive. There, Judge Lively stated at p. 1089:

Finally, in every case such as this where injunctive relief is sought a court must balance the public interest in having a government procurement process which can be administered without disruptive court-ordered restraints against the interests of the party seeking the injunction. See *M. Steinthal & Co. v. Seamans, supra,* 455 F.2d at 1301. Compare *Wilke v. United States,* 485 F.2d 180 (4th Cir. 1973) *supra.* Though an unsuccessful bidder must have suffered an "injury in fact" to have standing to bring an action for judicial review of an award, the "essential thrust" of its claims "is to satisfy the public interest in having agencies follow the regulations which control government contracting." *Scanwell Laboratories, Inc. v. Shaffer, supra,* 137 U.S. App.D.C. 371, 424 F.2d 859 at 864.

As the agency has followed its regulations, the essential test has been satisfied.

Therefore, for the reasons set forth above, the Court concludes that plaintiff's complaint fails to show a likelihood of success on the merits. Further, neither the balance of potential injury nor the best interests of the public favor the grant of the requested relief. Accordingly, plaintiff's motion for a preliminary injunction is hereby DENIED and the currently effective Temporary Restraining Order is hereby DISSOLVED. Because the Court is unable to grant any of the relief requested, the case will be DISMISSED.

IT IS SO ORDERED.