974 F.2d 1
 38 Cont.Cas.Fed. (CCH) P 76,395
 PROFESSIONAL BUILDING CONCEPTS, INC., Plaintiff, Appellant,
v.
The CITY OF CENTRAL FALLS, et al., Defendants, Appellees.
PROFESSIONAL BUILDING CONCEPTS, INC., Plaintiff, Appellee,
v.
The CITY OF CENTRAL FALLS, et al., Defendants, Appellees,
Promac, Inc., Plaintiff-Intervenor, Appellant.
 Nos. 92-1313, 92-1314.
 United States Court of Appeals, First Circuit.
 Heard June 2, 1992.
Decided Aug. 14, 1992.
 
 David M. Campbell with whom Girard R. Visconti and Visconti & Petrocelli Ltd., Providence, R.I., were on brief, for Professional Bldg. Concepts, Inc.
 Charles S. Kirwan with whom Lovett, Schefrin, Gallogly, Harnett, Providence, R.I., was on brief, for Promac, Inc.
 Michael F. Horan, Pawtucket, R.I., Everett C. Sammartino, Sr., Asst. U.S. Atty., Providence, R.I., was on brief, for City of Central Falls Housing Authority and U.S. Dept. of Housing and Urban Development.
 Albert A. DiFiore with whom Beals & DiFiore, Providence, R.I., was on brief, for Maron Const. Co., Inc.
 Before SELYA, Circuit Judge, RONEY,* Senior Circuit Judge, and PIERAS,** District Judge.
 PER CURIAM:
 
 
 1
 Two disappointed bidders sought an injunction against the award by a public housing authority of a construction contract on two housing projects. The lowest bid was rejected because no certified check or other guarantee was submitted with the bid. Contrary to the arguments of that bidder, the district court held this was not arbitrary, capricious or in violation of law. The third lowest bidder argues the district court erred in approving the contract award on a bid that it contends was unresponsive because it contained an additional line item of cost not contemplated by the invitation to bid. We affirm.
 
 
 2
 At dispute is a contract funded by the United States Department of Housing and Urban Development (HUD) for general improvements to two housing projects in Central Falls, Rhode Island. In February 1991, the City of Central Falls Housing Authority (the Authority) issued an invitation for bids, requiring the submission of firm, fixed-price, sealed bids prior to 2:00 p.m. on March 19, 1991.
 
 PBC's Bid
 
 3
 The bid invitation required submission of a bid guarantee with each bid. The bid guarantee was to be either
 
 
 4
 [a] certified check or bank draft, payable to the Central Falls Housing Authority, U.S. Government Bonds, or a satisfactory bid bond executed by the bidder and acceptable sureties in an amount equal to five percent of the bid ...
 
 
 5
 Professional Building Concepts, Inc. (PBC) submitted a non-certified corporate check. At the March 19, 1991 bid opening, the Authority and HUD officials recognized the deficiency in PBC's guarantee. After a review of HUD's manual and specifications, it was determined that the Authority could allow PBC to submit a proper security within three days. The next day, PBC substituted a certified check in the required amount for its company check. Present at the bid opening were the three lowest bidders, PBC, Maron Construction Company, Inc. (Maron), and Promac, Inc. (Promac). The minutes of the meeting indicate that no other variance in the bidding process was observed.
 
 
 6
 On March 27, the Authority determined that PBC was the low bidder. On April 4, the three lowest bidders met separately with the Authority. Following the conferences, Promac asserted that PBC had improperly contacted its subcontractors and engaged in "bid shopping." Promac's protest was subsequently rejected in an informal hearing held by the Authority on April 19.
 
 
 7
 By letter dated April 4, the Authority's architect recommended that the Authority award PBC the contract. On April 19, HUD informed the Authority by letter that it could award the contract to PBC. On April 23, Promac learned that the Authority had permitted PBC to substitute a certified check for its company check after the bid opening. Promac filed a new bid protest, contending that PBC's bid must be rejected as nonresponsive.
 
 
 8
 The Authority met on April 23 and unanimously voted to award the contract to PBC. Although the minutes of the meeting are not completely clear, it appears that the Authority voted that notice of award would not be signed until the Authority's legal counsel further reviewed the situation and issues involved.
 
 
 9
 The Authority's legal counsel later advised the Authority that, although the situation was borderline, PBC's failure to file a qualified bid guarantee was a material defect requiring rejection of its bid. The Authority rescinded its April 23 vote and elected to award the contract to Maron.
 
 
 10
 PBC brought suit challenging the award of the contract to Maron and seeking an injunction. The district court rejected PBC's claim for injunctive relief, holding that the Authority's decision to reject PBC's bid was correct and, therefore, PBC has no basis for injunctive relief 783 F.Supp. 1558.
 
 
 11
 The question in PBC's appeal is whether the submission of a corporate check, rather than a certified check as required by the invitation of bids, constitutes a material noncompliance in the bidding process.
 
 
 12
 The materiality of a bid guarantee requirement is governed by HUD procurement regulations which must be read in conjunction with the Federal Acquisition Regulations System. See 48 C.F.R. § 1.101 (1991). The Federal Acquisition Regulation (FAR) provides that, in sealed bidding, noncompliance with a solicitation requirement for a bid guarantee requires rejection of a bid, except in certain limited situations which are not applicable to this case. See RADVA Corp. v. United States, 17 Cl.Ct. 812 (1989) (quoting 48 C.F.R. § 28.101-4), aff'd, 914 F.2d 271 (Fed.Cir.1990).
 
 
 13
 No controlling cases have been called to our attention, and we have not located any interpreting FAR or HUD regulations with respect to the significance of a bid guarantee. Decisions of the Comptroller General, although not controlling, are instructive on this issue. See Keco Industries, Inc. v. Laird, 318 F.Supp. 1361, 1363 (D.D.C.1970). Beginning in 1959, the approach of the Comptroller General has been that "where an invitation for bids requires a bid to be supported by a bid guarantee and noncompliance occurs, the bid shall be rejected." To the Heads of Departments, Independent Establishments, Agencies, & Others Concerned, 38 Comp.Gen. 532 (1959); see In re Castle Floor Covering, 70 Comp.Gen. 530 (1991); In re Hudgins & Co., Inc., 56 Comp.Gen. 43 (1976). The Comptroller reasons that "the submission of a binding bid guarantee is a material condition of responsiveness with which a bid must comply at the time of bid opening." In re Castle Floor Covering, 70 Comp.Gen. 530 (1991).
 
 
 14
 The Authority could reasonably hold PBC's noncompliance was not a minor informality which could be sufficiently corrected after opening. PBC could have chosen not to comply with the bid guarantee requirement after the bid opening by stopping payment on its corporate check. The Authority would have been left then with no security whatsoever. Allowing PBC to submit a proper bid guarantee after the bid opening gave it the unfair opportunity to view the bids of the other competitors before making a firm commitment to perform the contract. The purpose of a bid guarantee is to provide assurances in the form of a firm commitment, that the bidder will, if successful, perform the contract. PBC's uncertified company check was not such a firm commitment.
 
 
 15
 PBC argues that there was no defect in its bid guarantee since HUD regulations, 24 C.F.R. § 85.36(h)(1) (1991), specify that in addition to a bid bond or a certified check a bid guarantee may take the form of any other negotiable instrument. PBC maintains that its company check satisfies the "other negotiable instrument" requirement. The invitation to bid for this contract, however, called for submission of, at least, a certified check as a bid guarantee.
 
 
 16
 The district court correctly determined that PBC's failure to comply with the bid guarantee requirement is not an informality which was waived by the Authority. According to the FAR, "[a] minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders." 48 C.F.R. § 14.405 (1991). Typically, defects in bid reply documents, such as failure to sign the bid under some circumstances, failure to execute certain certificates, and failure to return the required number of copies, have been classified as minor informalities. 48 C.F.R. § 14.405 (1991); see also Excavation Const., Inc. v. United States, 204 Ct.Cl. 299, 494 F.2d 1289, 1293 (Ct.Cl.1974). The defect in this instance goes beyond a mere informality, so it is of no consequence here that the Authority delayed several weeks before rejecting PBC's bid.
 
 
 17
 PBC argues that the Authority had already accepted its bid and awarded PBC the contract, thereby precluding the Authority from later rejecting PBC's bid. PBC contends that the Authority actually awarded it the contract, due to the vote taken, at the Authority's April 23, 1991 meeting. HUD regulations specifically state, however, that a firm, fixed-price contract award will be made in writing to the lowest "responsive and responsible bidder." HUD Regulations, 24 C.F.R. § 85.36(d)(2)(ii)(D) (1991). At that meeting the Authority indicated that, before executing the contract, its legal counsel should review the issues. After the review, PBC's bid was determined to be nonresponsive. The contract was never awarded to PBC.
 
 
 18
 PBC has failed to demonstrate that the challenged procurement action either had no rational basis or constituted a clear and prejudicial violation of applicable statutes and regulations. See Ulstein Maritime, Ltd. v. United States, 833 F.2d 1052, 1054 (1st Cir.1987); Smith & Wesson v. United States, 782 F.2d 1074, 1078 (1st Cir.1986).
 
 Maron's Bid
 
 19
 On May 8, 1991, the Authority voted to award the contract to the second lowest bidder, Maron Construction Company, Inc. Promac, the third lowest bidder, informed the Authority that it would seek judicial review of its decision. Rather than address the merits of Promac's challenge to the responsiveness of Maron's bid, the Authority rejected Promac's challenge as being untimely filed. The district court rejected Promac's challenge on the merits.
 
 
 20
 Paragraph 7 of the Authority's form of bid requires unit prices for "additional or deductive work" required from bidders with respect to (1) the price per square foot for re-pointing additional cracks, (2) the price per square foot for repair of damaged areas of stucco finish, (3) the unit price for the removal and replacement of individual brick, and (4) the price per linear foot for the addition of new floor tile. Of the eight bids received, only Maron's bid included a handwritten fifth line item in addition to the four. Maron added an extra line item providing for a unit price of $100 per square foot for concrete repair work.
 
 
 21
 Promac argues that Maron's modification of the bid form rendered its bid unresponsive because use of the bid form was mandatory and because the modification was a material pricing term. Promac contends that the additional item rendered Maron's bid uncertain in price, since Maron did not include the cost of the concrete repair work in its base bid nor did it provide a basis for determining this cost.
 
 
 22
 The Authority and Maron, however, agree that this addition relates to note 12 of the plans which states:
 
 
 23
 12. Inspect entire building for damaged stucco areas. Identify all areas requiring concrete repair. Repair will be accomplished under square foot unit prices, see specifications.
 
 
 24
 Additionally, section 03732 of the specifications, entitled "Concrete Repair," indicates how a contractor is to accomplish the required concrete repair work.
 
 
 25
 The district court, considering item 5 of the bid package instruction sheet which cautions bidders to pay particular attention to specifications and the special instructions of note 12 of the plans, held that Maron's bid was responsive since it complied with these instructions. The Authority's action in awarding the bid to Maron had a rational basis and was not a clear violation of applicable statutes and regulations. See Ulstein, 833 F.2d at 1054.
 
 
 26
 Although not reflected in the district court's decision, Promac's protest of Maron's bid appears to have been untimely filed. Apparently neither Promac nor any other party filed an objection or protest as to Maron's written line item insertion until early July 1991, almost four months after the date of the bid opening and after this court case had already commenced. The Authority summarily dismissed the protest at that time on the ground that it was not timely filed. Although the HUD Rules and Regulations do not set forth any fixed period of time for the filing of a protest, it would seem that protests should be filed within a reasonable period of time.
 
 
 27
 In deciding to address the merits, the district court pointed out that the Authority has not adopted any formal bid protest procedures as required by the HUD regulations, nor has it provided Promac with any guidelines relating to its protest filing procedures.
 
 
 28
 The bids were opened March 19, 1991. All parties had the right to inspect the bids from that day on. In addition, Promac exercised its rights under the Freedom of Information Act on April 23, 1991. On that same day, Promac submitted a protest, based on information learned concerning the bidding process, that PBC had submitted an uncertified corporate check. Knowledge of Maron's allegedly unresponsive bid would seem to be attributed to Promac no later than April 23. There being no set time limit for protests, the appropriate period would seem to be a reasonable period of time after the alleged irregularity was known or should have been known.
 
 
 29
 Promac should have known of the alleged nonresponsive bid at the time of the opening of the bids on March 19, 1991, and in no event later than April 23, 1991. Nevertheless, Promac did not act until July 1991. Since bids were binding on bidders for 90 days, then 90 days from the opening of the bids could be deemed an outside limit for a reasonable time to protest. Thus, the Authority appears to have been acting properly when it held that Promac failed to file a timely protest.
 
 
 30
 Affirmed.
 
 
 
 *
 Of the Eleventh Circuit, sitting by designation
 
 
 **
 Of the District of Puerto Rico, sitting by designation