DODD ET AL. *v.* RUE ET AL.

(No. A-7904504—Decided December 19, 1979.)

Court of Common Pleas of Hamilton County.

*Mr. William Flax,* for plaintiffs.
*Mr. James B. Helmer, Jr., Mr. John A. Lloyd, Jr.,* and
*Mr. C. R. Beirne,* for defendants.

MORRISSEY, J.   This is an action brought by several parents of school age children, as individuals and taxpayers and as representatives of a class of all similarly situated persons, for injunctive relief against the Board of Education of the City School District of the City of Cincinnati (hereinafter Cincinnati School Board), its present members and the Superintendent of the Cincinnati Public Schools and for damages against former school board member Robert S. Brown. The plaintiffs reside in an area of the city which had consti-

tuted part of the attendance area of Roberts Junior High School and Western Hills Senior High School. This area was reassigned for the school year 1979-80 to Porter Junior High School and Taft Senior High School. The plaintiffs seek through this action to have this court reverse the decision of the Cincinnati School Board and prevent the board from implementing the reassignment plan.

On August 24, 1979, the court overruled the motion of the Cincinnati School Board to dismiss the claim for injunctive relief against it and overruled the motion of the plaintiffs for an "interlocutory order staying reassigning of plaintiff children." This matter was set for evidentiary hearing on the plaintiffs' claim for injunctive relief against the Cincinnati School Board for September 5, 1979. Upon the motion of the Cincinnati School Board, and pursuant to Civ. R. 65(B)(2), the evidentiary hearing on plaintiffs' claim for injunctive relief was consolidated with the trial on the merits of this claim.

The action proceeded to trial on the claim against the Cincinnati School Board, its present members, and the superintendent on September 5, 1979.[1] Plaintiffs' presentation of evidence lasted approximately seven days and concluded on September 26, 1979. During this time the court heard the testimony of some thirty witnesses, including parents, students, former and present school board members, former and present school board employees and the Superintendent of Schools. The court also personally visited Taft and Western Hills Senior High Schools and Roberts and Porter Junior High Schools and examined over 50 exhibits.

The plaintiffs object to sending their children to the predominantly black Porter Junior High School and Taft Senior High School on the grounds that those schools are unsafe, that those schools do not offer as many courses as Roberts Junior High School and Western Hills Senior High School, that the plaintiffs were not heard before the changes were made, that students at Porter Junior High School and

---

[1] Plaintiffs' claim against former board member Robert S. Brown was severed from these proceedings and Brown's counsel was excused from attending the trial on the claims against the Cincinnati School Board and its present members and Superintendent. A motion of defendant Brown for summary judgment was granted on December 19, 1979.

Taft Senior High School are not proper associates because they have lower test scores than students at Roberts Junior High School and Western Hills Senior High School, that at Porter Junior High School and Taft Senior High School the teaching staffs are not as qualified, the drop-out rates are higher, and the incidence of teen-age pregnancies and venereal diseases are higher, assaults on students are higher, that the plaintiff children would be unable to participate in extracurricular activities, that no college preparatory program exists at Porter Junior High School but does at Roberts Junior High School, and that interracial dating and, possibly, marriages might occur.

At the conclusion of the plaintiffs' evidentiary presentation, the court granted the motion of the Cincinnati School Board to dismiss the claims against it and its present members and superintendent pursuant to Civ. R. 41(B)(2) and overruled plaintiffs' request for injunctive relief. In response to plaintiffs' motion for written findings of facts and conclusions of law, the court submits the following:

## FINDINGS OF FACT

1. On March 26, 1973, the Cincinnati School Board passed the following resolution:

"Therefore, it is the policy of the Cincinnati Board of Education that quality integration education is the highest goal of the Cincinnati Public Schools. While this purpose shall remain clear, devices used to achieve this goal may vary with time and circumstances. Whenever a relevant decision is to be made, the potential for achieving integration shall be assigned a high priority."

2. On January 14, 1974, the Cincinnati School Board passed a resolution which established an open enrollment transfer program that permits any student eligible to attend a Cincinnati junior or senior high school within the Cincinnati Public School District to transfer from his assigned "neighborhood" school to any other school of the student's choice, so long as the transfer improves racial balance at the new, receiving school and does not adversely affect racial balance at the old, sending school.[2]

---

[2] This plan does not apply to Walnut Hills High School which is a college preparatory school open only to students who pass a qualifying examination.

3. As a result of the Cincinnati School Board's open enrollment plan, hundreds of black children elected to attend Western Hills Senior High School and Dater Junior High School. Many of these black children had been attending Taft Senior High School and Bloom Junior High School.

4. As a result of the Cincinnati School Board's open enrollment plan both Western Hills Senior High School and Dater Junior High School were overcrowded for the 1978-79 school year. Western Hills Senior High School, which has a capacity for 2,770 students, had 3,115 students in 1978-79. Dater Junior High School in the same school year had a capacity of 1,000 students, but had 1,200 enrolled.

5. At the same time, Taft Senior High School and Bloom Junior High School had become severely underutilized. In school year 1978-79, Taft Senior High School had a capacity for 1,050 students but had an enrollment of only 770. Bloom Junior High School had a capacity for 900 students but had an enrollment of only 414.

6. On February 12, 1979, Superintendent Jacobs made the following statement to the Cincinnati School Board:

"After having reviewed the recommendations of the Task Force it has become evident that some schools in the Western Hills High School District remain overcrowded, while other schools in the Taft High School District remain under capacity. Therefore, I am recommending that certain boundary changes be made which will reduce overcrowding in the Western Hills High School District and more efficiently utilize buildings in the Taft High School District. These recommendations are included in my report."

7. The superintendent then recommended, and the Cincinnati School Board approved, a student reassignment plan which had the following features among others:

a. A number of students were reassigned from the overcrowded Dater Junior High School to Roberts Junior High School.

b. To make room at Roberts Junior High School for the students previously at Dater Junior High School, a number of students who would have attended Roberts Junior High School were reassigned to Porter Junior High School. As Porter Junior High School is a feeder school for Taft Senior

High School, upon promotion these students would be assigned to Taft Senior High School.

c. To make room at Porter Junior High School for the students previously at Roberts Junior High School, a number of students who would have attended Porter Junior High School were reassigned to the underutilized Bloom Junior High School.

d. Senior high age students who lived in the Oyler and Riverside-Harrison Elementary School Districts were reassigned from Western Hills Senior High School to Taft Senior High School.

8. The effect of these reassignment changes was consistent with the Cincinnati School Board's March 26, 1973 policy on providing quality integrated education. As a result of the changes, Western Hills Senior High School, which has a capacity for 2,770 students, had its projected average daily membership drop from 3,115 to 2,791 students and the percentage of black enrollment increase from 19.29 percent to 20.47 percent. Taft Senior High School, which has a capacity for 1,050 students, had its projected average daily membership increase from 770 to 950 students and the percentage of black enrollment decrease from 94.39 percent to 80.00 percent. Dater Junior High School, which has a capacity for 1,000 students, had its projected average daily membership drop from 1,200 to 990 students and the percentage of black enrollment increase from 25.14 percent to 30.62 percent. While the projected enrollment at Roberts Junior High School remained about the same, the percentage of black enrollment increased from 6.60 percent to 8.12 percent. Porter Junior High School, which has a capacity for 700 students, had its projected average daily membership drop from 713 to 679 students and the percentage of black enrollment decrease from 94.52 percent to 58.30 percent. Bloom Junior High School, which has a capacity for 900 students, had its projected average daily membership increase from 414 to 779 students and the percentage of black enrollment decrease from 94.43 percent to 92.62 percent.

9. The plaintiffs in this action are white parents of school age children who reside in the Riverside-Harrison Elementary School District and whose children, as a result of the

Cincinnati School Board's reassignment plan, have been reassigned from Roberts Junior High School and Western Hills Senior High School to Porter Junior High School and Taft Senior High School.

10. No plaintiff in this action has a child who either presently attends either Porter Junior High School or Taft Senior High School or has ever attended either Porter Junior High School or Taft Senior High School.

11. Plaintiffs failed to demonstrate that Porter Junior High School and Taft Senior High School are unsafe. Indeed, the evidence indicated that Porter Junior High School and Taft Senior High School are as safe as any other school in the Cincinnati School District.

12. Plaintiffs failed to demonstrate that the teaching staffs at Porter Junior High School and Taft Senior High School are unqualified. Indeed, the evidence indicated that the qualifications of the teaching staffs at those two schools are comparable with the qualifications of the teaching staffs at Roberts Junior High School and Western Hills Senior High School.

13. Plaintiffs failed to demonstrate that their children would be denied the opportunity to participate in extracurricular activities.

14. A college readiness program exists at Porter Junior High School but not at Roberts Junior High School. Any of the plaintiffs' children who pass the qualifying examination may attend the college preparatory program at either Walnut Hills High School or at Roberts Junior High School. Any of the plaintiffs' children who are unable to pass the qualifying examination, may attend the college readiness program at Porter Junior High School.

15. The evidence is clear and uncontradicted that harm would come to thousands of school children if the injunction plaintiffs seek was granted. That harm includes the complete reorganization of at least four schools, the reassignment of thousands of students, preparation of new schedules for all students, reassignment of several teachers, the collection of and redistribution of thousands of textbooks, the movement of furniture and equipment and the alteration of bus routes and schedules. Superintendent Jacobs testified that such an injunction would have a "catastrophic" effect on public

education in this city and would likely result in a flood of parents second-guessing the superintendent's assignment policies.

16. Severe financial problems face the Cincinnati School District which mandate that the superintendent run the most efficient school system possible. The reassignment plan was such an efficiency move. Its purpose was to relieve over-crowding in the Western Hills Senior High School attendance district and add pupils to the underpopulated Taft Senior High School District.[3] Such a plan allowed new programs and courses to be offered at schools in the Taft Senior High School district which benefit not only the newly reassigned students but all students in that district.

## CONCLUSIONS OF LAW

1. No parent or child has the right to select the public school the child desires to attend. By statute in Ohio that duty falls squarely to the Superintendent of Schools. R. C. 3319.01 provides that "[t]he superintendent of a***city***school district shall***assign the pupils of the schools under his supervision to the proper schools***."[4]

2. Public officials are presumed to have properly discharged their duties. *United States* v. *Chemical Foundation, Inc.* (1926), 272 U. S. 1; *Goldberg* v. *Truck Drivers Local Union No. 299* (C. A. 6, 1961), 293 F. 2d 807, certiorari denied, 368 U. S. 938; *Donaldson* v. *United States* (C. A. 6, 1959), 264 F. 2d 804; *In re State Thread Co.* (C. A. 6, 1942), 126 F. 2d 296. The Cincinnati Superintendent of Public Schools is entitled to the presumption that his reassignment plan was a proper exercise of R. C. 3319.01.

3. For the injunction sought by plaintiffs to issue this court must be satisfied that not granting the injunction would expose the plaintiffs to a significant threat or irreparable harm, that such irreparable harm to plaintiffs outweighs any

---

[3] The testimony of Superintendent Jacobs in this area was corroborated by the testimony of Cincinnati School Board Vice President John S. Rue and board member Ann Patty and was uncontradicted.

[4] Plaintiffs have at no time claimed that the Ohio General Assembly was not properly delegated the authority by the Ohio Constitution to enact this statute. See Section 7, Article I, and Sections 2 and 3, Article VI, of the Ohio Constitution. Thus, this court sees no merit in plaintiffs' allegation that the reassignment plan violates Section 20, Article I of the Ohio Constitution.

injury that the granting of the injunction may cause the defendants, and that the public interest will be served by issuing the injunction. *Adams* v. *Ohio Dept. of Health* (C. P. Montgomery, 1976), 5 O. O. 3d 148, 152, 356 N. E. 2d 324; *Adams* v. *Federal Express Corp.* (C. A. 6, 1976), 547 F. 2d 319, 323; *Cincinnati Electronics Corp.* v. *Kleppe* (C. A. 6, 1975), 509 F. 2d 1080.

4. The court does not believe that plaintiffs have satisfied their burden of proof as to any of these required elements for injunctive relief. While plaintiffs expressed fear of sending their children to Porter Junior High School and Taft Senior High School, this fear was in every instance based upon unwarranted speculation or hearsay. The evidence indicated that students were as safe or safer at Porter Junior High School and Taft Senior High School as those at any other school in the Cincinnati School District. The quality of the teaching staffs at the four relevant schools was comparable. No plaintiff was able to point to a single course that his or her child wished to take which the Cincinnati School Board would not provide them because they were assigned to either Porter Junior High School or Taft Senior High School. Plaintiffs presented no credible testimony that educational opportunities for children attending Porter Junior High School or Taft Senior High School were in any respect inferior to those offered to children attending Roberts Junior High School or Western Hills Senior High School. In short, the court does not believe plaintiffs have proved that the reassignment has harmed or will harm their children in any manner.

On the other hand, granting the injunction sought by plaintiffs, which would result in the Cincinnati School District being returned to the *status quo ante,* would bring clear, definite, and immediate harm to the defendants and the public. Running an efficient school system is not only in the public interest of all taxpayers, it is also a necessity the Cincinnati School Board must acknowledge in light of the precarious financial condition of the school district.[5] Undoing the superintendent's reassignment plan would return Western Hills Senior High School and Dater Junior High School to .ex-

---

[5] Superintendent Jacobs testified that the Cincinnati School District is between 8 and 9 million dollars short of being able to keep the public schools open through the remainder of 1979.

tremely overcrowded conditions and would make Taft Senior High School and Bloom Junior High School severely underutilized schools. Nor can this court ignore the chaos, cost and educational deprivation that would result to thousands of Cincinnati students, parents, educators and taxpayers if the reassignment plan were now to be undone.

5. In addition, plaintiffs' claim that this reassignment plan violates their right to equal protection of the laws under Section 2, Article I of the Ohio Constitution fails. First, it should be noted that contrary to plaintiffs' contentions, the superintendent did not single them out to bear the brunt of integration. The superintendent's February 12, 1979 recommendations to the Cincinnati School Board involved the closing of a dozen schools and a redrawing of student attendance zones all over the city. Approximately 5,500 students were affected by these changes. These changes involved the reassignment of white students to predominately black schools and black students to predominantly white schools in several areas of the city. Plaintiffs have never claimed that their residences are any nearer to Roberts Junior High School and Western Hills Senior High School than they are to Porter Junior High School and Taft Senior High School.

Secondly, under the "two-tiered" equal protection test applied by the Ohio Supreme Court, plaintiffs have failed to satisfy either the first tier of that test that the reassignment of their children was not justified by a compelling governmental interest or the second tier that no rational basis exists for the reassignment plan.

First tier equal protection analysis occurs only when class-based action infringes upon a "fundamental right" or establishes a "suspect" classification. *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368, 373. Plaintiffs have never identified any "fundamental right" at stake in this case and this court has been unable to discern one.[6] Nor does it appear that any students were reassigned on the basis of any "suspect" classification.[7]

---

[6] As the Ohio Supreme Court recently held, there is no fundamental right to an education under the Ohio Constitution. *Bd. of Edn.* v. *Walter* (1979), 58 Ohio St. 2d 368. See, also, *San Antonio Independent School Dist.* v. *Rodriguez* (1973), 411 U.S. 1 (no fundamental right to education under the federal Constitution).

[7] Assuming, simply for the sake of argument, that better racial balance was the sole intent of the board, and that the board therefore reassigned these pupils solely

Thus, it appears that plaintiffs' equal protection challenge to the student reassignment plan must be judged by the second tier of analysis, that is, whether a rational basis existed for the Cincinnati School Board's action.

Simply put, class-based state action will pass the rational basis test if any set of facts reasonably could be conceived that would sustain it. *Primes* v. *Tyler* (1975), 43 Ohio St. 2d 195, 198-199 (citing *McGowen* v. *Maryland* [1961], 366 U. S. 420, 425); *State, ex rel. Clark,* v. *Brown* (1965), 1 Ohio St. 2d 121, 125-26 (quoting, *Allied Stores of Ohio, Inc.* v. *Bowers* [1959], 358 U. S. 522, 528). Furthermore, in one of its most recent pronouncements on the rational basis test, the Ohio Supreme Court held that one who challenges class-based state action must show *beyond a reasonable doubt* that the rational basis test had not been met. *Bd. of Edn.* v. *Walter, supra* (58 Ohio St. 2d 368), at page 376.

This court believes that several rational bases exist for the student reassignment plan and that any one of these bases is sufficient to permit the reassignment plan to pass the rational basis test. The stated reason for the reassignment plan — to reduce overcrowding at Western Hills Senior High School and Dater Junior High School and to fill up the neighboring Taft Senior High School and Bloom Junior High School — was never challenged by plaintiffs and this court finds such reason to be a rational basis for the plan. Furthermore, the Cincinnati School Board's desire to run a more efficient school system in light of its financial difficulties and to improve the programs offered at Taft Senior High School and Bloom Junior High School by the influx of more students are also rational reasons for the reassignment plan.[8]

6. This court concludes that both Porter Junior High School and Taft Senior High School are "proper" schools

on the basis of race, as a matter of law there would have been no equal protection violation even though the board's action would be reviewed under the higher strict scrutiny standard. This is because better racial balance in our public schools is a "compelling government interest" that justifies the board in making decisions on the basis of race. *Johnson* v. *Chicago Bd. of Edn.* (C. A. 7, 1979), 604 F. 2d 504, 48 U. S. L. W. 2149.

[8] Thus, there is no merit to plaintiffs' claim that this reassignment plan violated the "thorough and efficient" clause of Section 2, Article VI of the Ohio Constitution. The court notes that that clause of the constitution is not directed to school boards or superintendents but *solely* to the Ohio General Assembly.

within the meaning of R. C. 3319.01 and that it was not an abuse of discretion for the superintendent to reassign the plaintiffs' children to those schools.

7. Finally, the reassignment plan was also consistent with the Cincinnati School Board's policy on giving the potential for achieving racial integration a high priority to any relevant decision and consistent with recent pronouncements of the United States Supreme Court in the Dayton and Columbus desegregation cases that when a school board reassigns students, such reassignments must comply with the Fourteenth Amendment.[9] Indeed, inasmuch as the reassignment plan was designed to and has had the effect of improving racial balance in certain schools in the Cincinnati School District, action by this court to undo that reassignment plan would very likely be state action in violation of the Fourteenth Amendment to the United States Constitution. The Supremacy Clause of the United States Constitution, Article VI, Clause 2, would prohibit this court from making such an order.

Thus, this court's decision to dismiss plaintiffs' claims against the Cincinnati Board of Education, its present members and the superintendent, is based on four separate legal conclusions: that plaintiffs failed to make the proper showing of injunctive relief; that plaintiffs failed to show either that no rational basis existed for the reassignment decision or that the reassignment plan was irrational beyond a reasonable doubt; that the plaintiffs failed to demonstrate that Porter Junior High School and Taft Senior High School are not proper schools or that it was an abuse of discretion for the Superintendent to assign the plaintiffs' children to such schools; and that the Supremacy Clause of and the Fourteenth Amendment to the United States Constitution prohibit this court from exercising its equity powers to undo an action of the Cincinnati School Board which was designed to and has had the effect of enhancing integration of the public schools in question. All of these legal conclusions are independent conclusions. Any one of these four conclusions is sufficient in and of

---

[9] *Dayton Bd. of Edn.* v. *Brinkman* (1979), 443 U. S. 526, 47 U. S. L. W. 4944, 4947; *Columbus Bd. of Edn.* v. *Penick* (1979), 433 U. S. 449, 47 U. S. L. W. 4924, 4927.

itself to support this court's decision to dismiss plaintiffs' claims against the Cincinnati School Board.

*Claims dismissed.*